of America, number 19-1477PR. Let me make sure that we have both counsel here and they can both hear us. First, we have Mr. Peres for the... Good morning. Good morning, Your Honor. And do we have Mr. Roblets for the appellee? Good morning, Your Honor. Very good. And you  both hear us, I trust, and hear each other? Yes, Your Honor. That's correct. Very good. So, Mr. Peres, I understand you have ten minutes of which you have reserved three minutes for rebuttal. Is that right? Yes, Your Honor. Okay, so why don't we hear from you? Thank you, Your Honor. May it please the court, my name is Daniel Perez. I represent the petitioner Usama Kassir. This appeal has taken a somewhat atypical path since the Certificate of Appealability was issued. Three judges of the court issued a Certificate of Appealability on two issues, whether Kassir's 2255 motion was timely and whether Section 842P is a crime of violence. I will concede at the outset that after reviewing the record, it did seem that even if Kassir prevailed in this appeal, it would be an incomplete victory because were the court to vacate the 842P conviction, he still would be serving two sentences of life in prison. But then I went back to the order that had been issued by Judges Kuhler, Park, and the late Judge Winter, and I briefed those issues. The government then did something quite unexpected. They conceded that the 2255 motion was timely filed, but they entirely ignored the question of whether 842P is a crime of violence. They never even mentioned the statute in the argument portion of their brief. Instead, they said he's not claiming the right to be released from custody. They dropped a footnote in their brief at page 21 saying there is this concurrent case doctrine, and they put that term in quotation marks as if it was a novelty. And they took the position, quote, it is an open question whether the discretionary doctrine remains viable in the habeas context. But the court need not apply the doctrine here because Kassir's claim is not cognizable under 2255. Then the government wrote in its February 26th letter the concurrent sentence doctrine is a discretionary doctrine not grounded in the text of 2255. And of course, the court issued an order less than two weeks ago directing the parties to and concluded, yes, the doctrine does apply to 2255 petitions. And this court should apply it and dismiss Kassir's claim, a remarkable feat of intellectual flexibility. What is notable about the doctrine is that apart from it being used in quotes by the government, it is a doctrine of judicial convenience. That is not my term. That was Judge Arnold's assessment in 2019. The doctrine has been described by this court as alive and, if not well, available in Vargas. Pat, counsel, I think it's fair to say that it is a doctrine of judicial convenience. But what if it's convenient? What if you have a case in which, unless you apply the doctrine, you will have to be deciding a whole bunch of tangled and difficult constitutional issues? Well, Judge Jacobs, I would give two responses to that question, and it's a fair question. The first is that the government has repeatedly in this appeal said that the doctrine does not apply or that the doctrine does not need to be invoked. But the doctrine benefits the court. So how could the government waive a doctrine that serves the interest of the court? I'm not saying it does in this case, by the way. I'm just saying hypothetically, if you had a really difficult, complicated, and ramified habeas case appeal, why would the government's lack of interest in that mean that we could not invoke a doctrine that is designed to save us the decision, the unnecessary decision of complicated questions? Well, that brings me to my second response, which is it's not a complicated question in this case. I'm just saying hypothetically, but at the moment you're saying that the fact that the government didn't raise it or said don't bother with it means that there's something wrong and that we can't raise it. Of course, Your Honor, the court can. It is discretionary. So by definition, the court can. I don't think it's irrelevant that the government comes in and says it's an open question, and it shouldn't be applied here. I think that's still worth some weight. But to go to the second part of Your Honor's question, the question as to it's a discretionary doctrine. Why should we not invoke it in a complicated case? And that's a fair response, but this is not a complicated case. This is a very, very straightforward case, and I rather suspect that that's why Judges Pooler, Park, and the late Judge Winter issued the Certificate of Appealability. In Leocal, the court said in footnote 4, a number of statutes criminalized conduct that has as an element the commission of a crime of violence under Section 16. And then, of course, in DiMaia, the Supreme Court held that Section 16b defined a crime of violence in an unconstitutionally vague manner. That is the reverse of a complicated question. This is actually a very straightforward appeal. And I will say as well, it would be one thing if courts over the last literally 50 years, as far as I can tell, and this doctrine appears to be older than I am. I'm 51 years old. If courts still had applied it consistently, or if this court had applied it consistently, that would be one thing. But when as recently as 2019, a panel of this court referred to the doctrine as the so-called doctrine, and invoked of all places Black's Law Dictionary for a definition of the doctrine. I think I was on that panel. It was an outstanding quotation, we're sure. It was absolutely brilliant. Brilliant, Judge Jacobs. But it has not exactly been embraced by the Second Circuit over the last three, four, or five decades. Well, Mr. Peres, do you mind? I'm sorry, Judge Nardini, I'm going to interrupt because I do want to get this question in before your time is up. And let me pose this thought, and I'd like to hear your reaction. One of the reasons why it may be called the so-called concurrent sentence doctrine is because it's really nothing more than a subspecies of harmless error doctrine. And isn't it the case that even though in Ray, the Supreme Court said, well, these two sentences are not truly concurrent, because after the Sentencing Reform Act of 1984, you've got special assessments, so when you're reviewing a conviction, at least on direct appeal, you can't say when the alleged error is preserved, you can't say that the sentences are truly concurrent, and therefore nothing's at stake. But aren't there other circumstances where you can say, look, these sentences, so much challenging on direct appeal, for example, the length of, say, one drug sentence, but they have multiple concurrent terms of imprisonment, that we will say, look, the error of which you are complaining is, in fact, harmless. It works no effect in your life in real terms, and therefore we will not recognize it, particularly in plain error situations, right? So isn't this, just to come back to my original question, something that we should be viewing through the lens of our more general doctrines of harmless error, whether when it's preserved on direct appeal, when it's in plain error land, or in habeas, arguably, whether we're looking at cause and prejudice, for not having raised it in direct appeal, under the prejudice prop. I know it's a long question, and I apologize for it, but if you could just tell me what you think the relationship is between the doctrine that does survive and our harmlessness case law. Your Honor, the Seventh Circuit rested its holding in Ruiz on the doctrine of harmless error, and as the government pointed out, that holding was reinforced by analogy to the concurrent sentence doctrine. So obviously there is a relationship, and Your Honor characterized it as a subspecies, and I would not take issue with that. The question that I would go back to, again, we continue to get further and further afield in this case from the certificate of appealability that the court itself granted to a pro se. I mean, I will just say, just remember, right, once we issue a certificate of appealability, our threshold for that is quite low, and it is certainly not binding on the merits panel in any way, right? I understand. I recognize that. But isn't this question, though, likely to come up again? I mean, isn't the question of whether 842P is unconstitutionally vague likely to arise again? And so what judicial resources are really going to be conserved by avoiding the question in this case? It's before the court. It has been briefed. We are discussing it today, and the court can simply issue a merits decision that frankly does not need to be very complicated at all, and that would dispose of it not only in this case in a manner that, by the way, is not going to result in this prisoner who's serving a life sentence serving any less time, but it would give litigants and parties clarity as to a statute that is used not infrequently in these types of cases going forward. Okay. Well, you've reserved three minutes, so why don't we hear from the government? Mr. Robles, are you there? Good morning, Your Honors. May it please the court. My name is David Robles. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States on this appeal. I want to start by addressing what is not at issue in this appeal, and Mr. Perez alluded to it earlier, and that's that Mr. Kassir's liberty is not at stake. He will not be released from custody if the court reaches the merits and rules in his favor, nor will he suffer any collateral consequences that rise to the level of custody. Judge Nardini just asked about whether the concurrent sentence doctrine is a species of harmless error, and I do think that's the right way to think about this appeal. Whether the claim is not cognizable, as we argued principally, or whether the court simply should exercise its discretion not to consider the merits, the point remains the same. Mr. Kassir will remain in custody regardless of the outcome of this appeal. We argued principally that the claim was not cognizable because Section 2255 is only available when an interest as compelling as freedom from custody is at stake. That's from this court's decision in Kaminsky. And so the focus in Section 2255 claims is on the impact that the relief is going to actually have on the defendant's liberty that comes directly from the text of the statute, which requires a petitioner to show that he's claiming the right to be released. Would that encompass some situations where the prisoner is seeking a right to release, even though he may not or will not actually be released? And if so, wouldn't the statute just read that it applies to a prisoner in custody seeking to be released? What does the right have to do with it? When the court has looked at the jurisdictional requirements of Section 2255, it has looked at whether or not the relief that will be sought will actually lift a severe restraint on the petitioner's liberty. And so here, in order to give those words any meaning, as the court said in Kaminsky, that language, the right to be released, has to be read, has to be construed, as a demand to actually be released from custody. The Supreme Court's decision in Peyton v. Roe, which dealt with consecutive sentences, interpreted what it meant to be in custody in the habeas context and looked at that as the aggregate of time that a petitioner is actually serving in prison and not just on the individual sentences that were imposed on different counts. And so here, the key question is, is the relief that Mr. Kossiris is seeking going to in any way advance his release date or lift any severe restraint on his liberty that he's not otherwise facing as a result of the unchallenged life sentences? And the answer is no. The Third Circuit, as we pointed out in our brief, grappled squarely with this very similar factual scenario and found that the defendant there, who faced concurrent sentences that were unchallenged in the Section 2255 claim, lacked a cognizable claim. And while this court hasn't dealt with this particular factual scenario, the Third Circuit's decision in Ross is entirely consistent with other decisions from this court that have dealt with jurisdictional issues in the habeas context. So, for example, the court's decision in Densa from 2019 found that even though a petitioner might have standing to bring a habeas claim, the court still lacked jurisdiction, subject matter jurisdiction, over the claim. Now, that was a 2241 claim, but the rationale of that decision is the same. And it's that the petitioner has to show that the court has subject matter jurisdiction in order for the court to reach the merits of the claim. I'd also note that that's consistent with this court's decisions in Kaminsky and Retigliano that focused on what it meant to actually challenge your custody. Well, can I ask you this? You know, you can take a very rigid reading of 2255, but it seems that the case law from the Supreme Court and our court has already rejected it in other respects, such a rigid reading. So, for example, as you acknowledge, Payton v. Roe takes the view that custody doesn't necessarily mean custody now, right? So it says a petitioner in custody can also mean, in some respects, a petitioner who will be in custody, correct? Correct. And it's also true that the courts have generally recognized that you can raise a 2255 claim that, at best, might get you a resentencing but wouldn't necessarily get you released. So you're not necessarily limited to a claim under Payton v. Roe that I'm going to be released now, right? So we're not talking about 2255 requiring immediate release. And under these other cases, we don't require even a definite release in the future in the sense of a definite reduction in sentence, right? So you can claim that you deserve a resentencing, but on remand, the district court might very well impose the same sentence, right? That's right, Your Honor. So we're talking about a level. 2255 tolerates a certain level of speculativeness about whether or not your claim that relates to the validity of your sentence may or may not lead to your release, right? I think that's right, Your Honor, although I would note that when the courts have looked at the relief you're actually seeking, there has to be, as Your Honor said, an actual, real, concrete impact on the defendant's custody. Whether that happens now or in the future, the petitioner has to articulate, has to show that the relief he's seeking will actually impact his right to be released, whether that's now or in the future. And I would note that in this particular case, this particular case is unique in that a resentencing is not appropriate and it's not warranted. In fact, I note first that the defendant here has conceded that a resentencing is not appropriate and that he will not be released from custody regardless of the outcome of this appeal. Right, now his relief that he's seeking is simply vacator of that one conviction, which would obviously, if that happened, that would just be vacator of the one sentence, right? That's correct, Your Honor, and vacator of that one sentence would in no way implicate his right to be released from custody given the unchallenged life sentences, which he's not entitled to a resentencing on. I think the record before the court makes that very clear, that the district court viewed the charges, essentially two sets of charges in this case, one that related to Mr. Kassir running a jihad training camp in Oregon and the others that related to him running al-Qaeda's websites from Europe. And the record's clear that the court viewed those as two very different, I think they called them two, I think what the judge said was that they were a two-pronged offense. And so there's no, here there's no basis in the record to believe that Mr. Kassir might be entitled to a resentencing. And I'd note that that's another reason why we've argued, and we certainly, I want to clarify this point about the concurrent sentence doctrine, and it's that we did not concede or say that it did not apply in this case. What we said in our briefing was that the court need not reach the issue if it agrees with us on the jurisdictional piece. We do think the concurrent sentence doctrine applies in this case. Yeah, but you didn't raise it in anything except a footnote in your red brief, right? That's right, Your Honor. I mean, you could have had a section two in the alternative, and you didn't launch it. And I mean, if it is something that lies within our discretion, one of the things that often factors into our discretion is whether it's been adequately promptly raised by a party. And generally, don't we take the position that if a party raises an issue only in a footnote of their brief, that we don't deem it to have been adequately raised, right? I do think that's right, Your Honor. However, all of the factors here, of course, it's a discretionary doctrine that the court can invoke, and all of the factors here would weigh in favor of invoking such a doctrine if the court were to disagree with us on the jurisdictional issue. Well, let me ask you a little bit about that. And if I could just posit this, if we do get into the world of discretion here, and presumably one of the considerations would be judicial efficiency, right? For one thing, you're conceding that Cassir's motion is timely, and that you're conceding that Cassir's 842P conviction is unconstitutional if we were to reach the merits. So how would it be judicially inefficient if both parties agree on the merits for us to just send it back for vacater of that one sentence? That's the first question, and then I have another one. How is that inefficient? With respect to that first question, Your Honor, while the government isn't contesting the merits in this case, I will note that there is no binding precedent right now for the merits claim, and Cassir's brief doesn't reach or address the point of whether the predicate offenses in this case might qualify as crimes of violence under 16A's elements clause. And so again, while we're not contesting the merits, the court here has no guidance from the parties on how to analyze that issue. And you both agree in the outcome. I guess I'm not seeing the efficiency loss. Let me move on to a different question that's somewhat related, though. If we were to accept the government's proposition here, either under the concurrent doctrine or your construction of 2255 that you would, I take it, argue is not a discretionary question, but a mandatory construction of the scope of 2255. Aren't we setting up a situation where certain defendants would be placed in an odd catch-22? So let's take a hypothetical defendant, not like Mr. Cassir. Let's take Mr. Cassir, and I'll switch around the facts. Let's assume that he has a valid claim right now, as you conceded, if we were to get to the merits, as to the 842P claim. But you say it's not cognizable under 2255. But you said it's timely because it's brought within a year of the relevant Supreme Court case. Okay, we reject that claim now. Judgment enters. Four years down the road, the Supreme Court decides United States v. Jones, some hypothetical case in the future that calls into question the validity of his remaining counts or his remaining sentences. Isn't he out of luck under the concurrent sentence doctrine or your construction of 2255? Because now he has a valid 842P conviction that is no longer timely to raise in a 2255 because we adjudicate or we judge the timeliness of each claim on a claim-by-claim basis. So that's water under the bridge. And now we say, well, his other claims are not cognizable because he's got a valid or unchallengeable life sentence on his 842P conviction. And you could take any combination of convictions and different defendants. Aren't we creating a strange catch-22 where you're not eligible for one, but later you're not eligible for the others and they mutually block each other out? How would we solve that problem if you think it's a problem? So respectfully, your Honor, I have a couple of thoughts on that. The first is that I think as we pointed out in our briefs or certain cases that we cited in our briefing, the Seventh Circuit's decision in Ruiz and the Third Circuit's decision in Ross grappled with those sort of same hypotheticals and found them to be too speculative of a consequence not to decline to reach the merits of the Section 2255 claim. I think also if, for example, his life sentences were at some point later vacated, I think you may have an argument for remand to resentence him on the 842P sentence if he could show that that sentence was in some way interdependent with the life sentence. I think in this case he would not be able to do that. But what other options? If this were hypothetically a mandatory life sentence and then you go back on your resentencing and the only way to undo the 842P were to undo the conviction itself, but the only justification for doing that would be 2255. And that's what I'm saying. If we say now 2255 is unavailable, then presumably it would remain unavailable. And again, putting aside the particulars of Mr. Kassir, wouldn't we be building in that structural problem for future cases? And I'm trying to figure out why we would do that. Respectfully, I don't think that would be the case, Your Honor, because I think there's always the savings clause in 2255E that would allow the petitioner to bring a case, to bring a traditional habeas claim under 2241 where relief under section 2255 wouldn't be available. And I think that would be an avenue that a petitioner, in Your Honor's hypothetical, would be able to benefit from in that particular situation. All right. And then while testing your patience and that of Judge Jacobs, let me ask one more question there. Because the problem I posited is dependent on the first claim, no longer being timely in the future. It's one thing to take a claim like this, 842P can be decided purely as a legal matter. What if the claimant came in on 2255, like Mr. Kassir, with a fact-based challenge? And he said, I have discovered newly available witnesses who were not previously available in the exercise of due diligence, satisfies all the thresholds of 2255. I've found these three witnesses who can come forward and prove I'm not guilty of the 842P. And we say, sorry, concurrent doctrine, you know, 2255 can't be construed that way. You're out of luck. Come back in several years if you can get out from your other counts. In the meantime, those witnesses may die. So, again, aren't we putting ourselves into a structural situation because the timeliness analysis is the same, whether it's a fact-based 2255 challenge or legal-based 2255 challenge. Aren't we putting ourselves in, or putting the defendant in that same potential catch-22? I think, to answer Your Honor's question, I think that would be, again, wouldn't, my understanding is I think the petitioner there would be able to still avail himself of the savings clause to try to show actual innocence on the factual. Yeah, but they're dead. Again, take my hypothetical. We've made him wait several years, and those great witnesses he had in 2021 are dead. And so I think, Your Honor, that might be, as a discretionary matter, a reason why the court could exercise discretion on the concurrent sentence doctrine, I think, to review it now. All right, and then, I'm sorry, because then I have to come back to the circle, and then doesn't that, though, but how do you deal with your primary argument, which is this claim is simply not cognizable under 2255, and it's not a discretionary matter at all? And we have to kick it when he walks in here with those witnesses, say, sorry, you're out. So I understand Your Honor's concern. I think that, again, our primary argument is that the petitioner would have to meet the jurisdictional requirements of Section 2255, and the hypotheticals that the court is posing are the type, I think, that the courts in Reeves and Ross decided were too speculative to amount to concrete restraints on someone's liberty that would rise to the level of custody to make out a Section 2255 claim. All right. Mr. Roba, I appreciate your patience and that of my fellow panelists in answering my questions. It's been very helpful. So why don't we turn back to the appellant. Mr. Perren, you've reserved three minutes in rebuttal. Thank you, Your Honor. I just have a couple of brief points. This is a very simple case. The court is faced with two parties that, frankly, agree on the merits. 2255 was timely and 842P is unconstitutional. So the convenient thing to do is simply to say so, and it's more than convenient. As a practical matter, it's an advantageous thing to do because if 842P is unconstitutional, it does no one any favors, including and especially courts in this court and courts in the districts of the Second Circuit, to continue to labor under the false pretense that 842P is constitutional. The court should, in this case, simply issue an opinion or even a summary order saying the 2255 is timely, the statute is unconstitutional. Frankly, that's the right thing to do because it sounds to me like there is general consensus between the government and Mr. Kassir that count 13 at this point, in light of recent Supreme Court cases, is not constitutional. And that's why we have courts to correct these judgments and to make sure that they're correct going forward and to prevent the catch-22s in the future so that courts don't need to grapple with those kinds of complicated issues. I just want to briefly touch on the question of speculativeness, which is always a challenge for habeas petitioners. This is a very cold record. I identified harm as best I could in the most recent supplemental letter. That was, frankly, advocacy that was not based on the record because there really, for all intents and purposes, is not much of a record here. Mr. Kassir filed his pro se 2255. There was response by the government, and then it was dismissed or he was ruled against by the district court. But there is, as far as I'm concerned, there is at least a possibility that in terms of his prison designation, in terms of his prison programming, he could face some sort of harm by virtue of this 842P. I have a minute. As a result, again, I come back to the notion of the right thing to do, and frankly the convenient and advantageous thing to do is for the court simply to issue a ruling consistent with what we've discussed this morning. Thank you very much. Again, I'd like to tell both counsel that you did a very good job arguing this.